UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DILRAJ SINGH MANN,

        Petitioner,

    v.                                    CAUSE NO. 3:26cv485 DRL-SJF

BRIAN ENGLISH,

        Respondent.

## OPINION AND ORDER

Immigration detainee Dilraj Singh Mann, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Mann filed a reply. The petition is ready to be decided.

Mr. Mann is a citizen of India who entered the United States on December 24, 2014. On May 9, 2019, an immigration judge granted his request to withhold removal to India. On August 5, 2019, United States Immigration and Customs Enforcement (ICE) released Mr. Mann on supervised release subject to the condition that he refrain from committing crime. From 2023 to 2025, Mr. Mann was convicted of crime on five separate occasions. On December 6, 2025, he was transferred from a county jail to immigration detention, and ICE notified him that the reason for revocation was that he violated the condition of refraining from committing crimes.

Three weeks ago, an ICE official attested that, on April 1, ICE submitted a request for Mexico to accept Mr. Mann for removal. On April 6, ICE submitted a similar request to

Canada. On April 14, ICE submitted a similar request to Zambia. According to the ICE official, ICE regularly removes noncitizens to these countries.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Mann's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Mann ended six years ago. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] It does not appear that Mr.

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

Mann was detained beyond the removal period during his initial detention period, but the Warden relies on § 1231(a)(6) as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure

3

removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute removal. *Id.* at 700-01. Even after, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the

4

court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

To note, the Warden frames his arguments in terms of whether removal is reasonably foreseeable. He doesn't contend that the violations of Mr. Mann's release conditions might serve as an independent basis for detention. *Zadvydas* suggests as much, and there is more to it. *See Zadvydas*, 533 U.S. at 700 ("In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."). Mr. Mann seems to have been convicted five times from 2023-2025, including for three felonies, not least possession of methamphetamine, auto theft, and resisting law

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

enforcement. Why this would not be the argument is curious. But as a neutral arbiter, the court won't trace the reasons why without argument. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (party presentation rule). The court will resolve this petition based on arguments about the foreseeability of removal.

Significantly, Mr. Mann's immediate period of detention spans only five months. This might raise a question about the how to calculate the six-month period and the effect of an intact presumption, but the court need not address this today. Even if Mr. Mann could clear these hurdles, he cannot meet his initial burden of showing that removal is not likely or reasonably foreseeable. The record demonstrates that Mr. Mann will not be removed to India in the near future, but he does not adequately address the government's efforts to remove him to other countries, all measurably underway. The government has recently submitted requests to Canada, Mexico, and Zambia, which show no signs of stalling.

Mr. Mann contends that the Warden has not demonstrated that these countries have accepted him from removal, that a travel document has been requested, that an interview has been scheduled with these countries, that transportation has been arranged, or that a removal date has been set. He contends that the Warden has not explained why any of these countries would accept him. A reasonably foreseeable removal doesn't always mean that every task has been accomplished but mere boarding on a flight to another country. Though there may be more to undertake, the initial burden rests with Mr. Mann. And he doesn't explain how these perceived shortcomings suggest his removal won't occur in the reasonably foreseeable future. There is nothing inherently troublesome about the

6

government awaiting a response to an initial request from a third-country before proceeding with next steps for removal. And the government has pursued multiple options.

Mr. Mann further argues that the government has detained him for five months before taking meaningful steps to execute his removal. Though this argument might present a legitimate concern in some other case—after all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink, *see Zadvydas*, 533 U.S. at 701—the court largely assesses the likelihood of removal and its reasonable foreseeability by looking to the now and to the future. The court cannot say Mr. Mann has met his burden of showing that his detention will be indefinite or showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

For these reasons, the court:

(1) DENIES the petition for writ of habeas corpus [1]; and

(2) ORDERS the clerk to enter judgment and close this case.

SO ORDERED.

May 14, 2026

*s/ Damon R. Leichty*
Judge, United States District Court